CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

November 18, 2025
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| JACK THOMAS, JR., | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00109 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| CHADWICK DOTSON, et al., | ) | Senior United States District Judge |
| Defendants. | ) | |

### MEMORANDUM OPINION

Jack Thomas, Jr., a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against multiple individuals employed by the Virginia Department of Corrections (VDOC), including several unknown correctional officers and administrators. Thomas claims that he has been deprived of due process in violation of the Fourteenth Amendment and subjected to retaliation for engaging in conduct protected by the First Amendment. On July 21, 2025, defendants Chadwick Dotson, David Anderson, Joseph Bateman, B. P. Wagner, Edmond E. Earhart, K. C. Burcham, L. E. Adkins, Correctional Officer Blevins, and J. Adams moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 35. Less than 21 days later, Thomas moved for leave to file an amended complaint. ECF No. 46.

A plaintiff is entitled to amend a complaint once as a matter of course within 21 days after being served with a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). Accordingly, the court will grant Thomas's motion for leave to amend, rendering moot the motion to dismiss filed on July 21, 2025.[1] After screening the amended complaint, the court concludes that it must

---

[1] A "properly filed amended complaint supersedes the original one and becomes the operative complaint in the case." Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017).

be partially dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. This opinion sets forth the grounds for partial dismissal and addresses other pending motions.

## I.    Background

According to the amended complaint, Thomas has been incarcerated for more than 23 years. Am. Compl., ECF No. 46-1, ¶ 2 n.2. Thomas acknowledges that his prior felony convictions include convictions for malicious wounding and robbery. Id. ¶ 12. Court records available online indicate that Thomas has also been convicted of armed bank robbery and use or display of a firearm during the commission of a felony.[2] His current projected release date is May 30, 2056.[3]

On July 22, 2008, while housed at Sussex II State Prison, Thomas was charged with disciplinary offense 101b, making threats or plans to escape. Compl. Ex. E, ECF No. 1-1 at 47. Prison officials reported that Thomas was found in possession of "seven blankets, five torn ripped sheets [that were tied and knotted end to end], hand sewn denim gloves, . . . diagrams of distance listings, [an] address book including directions and unauthorized websites, offenders['] homes and State ID numbers, [a] handstitched ski mask with eye holes

---

[2] See Commonwealth v. Thomas, Nos. CR02F00122-00 (Richmond Cir. Ct.) (bank robbery); CR02F00125-00 (Richmond Cir. Ct.) (armed bank robbery); CR02F00126-00 (Richmond Cir. Ct.) (armed bank robbery); CR02F01202-00 (Richmond Cir. Ct.) (bank robbery); CR02F01205-00 (Richmond Cir. Ct.) (use or display of a firearm in committing a felony); CR02F01206-00 (Richmond Cir. Ct.) (use or display of a firearm in committing a felony); CR02F01208-00 (Richmond Cir. Ct.) (use or display of a firearm in committing a felony); CR02000351-00 (Henrico Cnty. Cir. Ct.) (use or display of a firearm in committing a felony); CR02000355-00 (Henrico Cnty. Cir. Ct.) (use or display of a firearm in committing a felony), available at https://eapps.courts.state.va.us/CJISWeb/circuit.jsp (last accessed Nov. 12, 2025).

[3] See VDOC Inmate Locator, available at https://vadoc.virginia.gov/general-public/inmate-locator/ (last accessed Nov. 12, 2025).

cut out, [and] a four inch straightened binder clip." Id. As a result of the 101b charge, Thomas

was transferred to Red Onion State Prison (Red Onion) on October 24, 2008. Id.

While at Red Onion, the Dual Treatment Team, which is headed by the chief of

housing and programs and includes other correctional and medical staff members, relied on

information in VACORIS, the VDOC's inmate information management system, to place

Thomas "in the indefinitely long, highly restrictive, intensive segregation IM Step-Down

Program . . . for approximately 1617 days (4.43 years)." Am. Compl. ¶ 8. Thomas alleges that

he was placed in the program at Red Onion as a result of "particular false information" in his

VACORIS file and that he was denied the opportunity to challenge the validity of the

information or otherwise contest his placement in the program. Id.

According to Thomas, the "particular false information" was included as part of the

following notation in his VACORIS file: "Escape Risk; 11/03/2010; Assaultive; Particularly

Hideous Crime; Orange 2-3-4" (collectively, the Security Information). Am. Compl. ¶ 2 &

Compl. Ex. A, ECF No. 1-1 at 5. Thomas alleges that John Doe #1, an unknown Red Onion

official, entered the Security Information in VACORIS on November 3, 2010, including the

allegedly false references to "Assaultive," "Particularly Hideous Crime," and "Orange 2-3-4,"

and that Thomas did not become aware of the information until May 3, 2023, nearly thirteen

years later, while incarcerated at River North Correctional Center (River North). Am. Compl.

¶¶ 2–3.

Upon discovering the Security Information in VACORIS, Thomas asked defendant

Bateman, the assistant warden at River North, and defendant Earhart, a unit manager, to

remove it. Id. ¶ 4. Although Bateman and Earhart did not respond to Thomas's written

requests, both defendants verbally communicated to him that they had spoken to the "higher-ups" and that the information would not be removed from his file. Id. ¶ 5. Consequently, in May 2023, Thomas filed a written complaint regarding the matter, followed by a regular grievance and a grievance appeal, all of which were unsuccessful.[4] Id. ¶ 6. Thomas alleges that Bateman, Earhart, the unidentified "higher-ups" collectively referred to as John Doe #2, and the defendants involved in the administrative remedy process—Warden Anderson, Operations Manager B. P. Wagner, and Western Region Ombudsman K. Paderick—"had the authority to remove this information from [his] file but failed to act despite knowing this information was false." Id. ¶ 7. Thomas claims that he "never would have experienced being in the IM Step-Down Program [at Red Onion] had it not been for the [allegedly false Security Information]" and that prison officials will likely rely on the information again in the future. Id. ¶¶ 12, 16–20. Thomas also believes that the information "will be relied on to deny [him] geriatric parole taking into account the newly expanded statutory criteria implemented on January 1, 2024, by the Virginia parole board." Id. ¶ 18.

Thomas claims that several named defendants—K. C. Burcham, B. P. Wagner, L. E. Adkins, Correctional Officer Blevins, and J. Adams—and unknown defendants referred to as John Doe #4 and John Doe #5 retaliated against him for pursuing his administrative remedies. According to the amended complaint, Burcham generated the grievance receipt for the written complaint that Thomas filed seeking to have the Security Information expunged from his prison file (RNCC-23-INF-00654). Id. ¶ 26. The written complaint indicated that the Security

---

[4] Thomas's regular grievance seeking expungement of the Security Information was rejected as an improper "Request for Services," and he was advised that information regarding his criminal history must be obtained from the Virginia State Police (VSP). Compl. Ex. C, ECF No. 1-1 at 22.

Information had been added to VACORIS on "11/03/2010." Id. Thomas alleges that Burcham retaliated against him by "deliberately altering" the grievance receipt to reflect that the information had been added on "11/03/2020." Id.

On June 10, 2023, Thomas submitted a written complaint (RNCC-23-INF-00859) regarding the incorrect date included on the grievance receipt for RNCC-23-INF-00654. Id. ¶ 27. He alleges that he subsequently met with Wagner on June 13, 2023, and that Wagner "convinced [him] through manipulation that the altered date on the [receipt] . . . was a mistake and to withdraw the complaint regarding the alleged typo." Id. ¶ 28. After Wagner convinced him to withdraw RNCC-23-INF-00859, Thomas inquired about the original version of RNCC-23-INF-00654, which had not been returned to him. Id. ¶ 29. In response, Wagner indicated that Thomas could not prove that the original complaint was missing. Id. When Thomas subsequently requested copies of the original version of RNCC-23-INF-00654, Wagner gave him "cut and pasted documents" that recited the contents of the receipt generated by Burcham. Id. ¶ 42.

Thomas alleges that Adkins altered information contained in RNCC-23-INF-00859, the written complaint that Wagner convinced him to withdraw. Id. ¶ 60. Although the complaint referred to "Orange 2-3-4" being added to Thomas's VACORIS file on "11/03/2010," Adkins incorrectly indicated on a grievance receipt that the complaint referred to "Orange 2-2-4" and "11/2/2010." Id. (emphasis added).

On June 26 or 28, 2023, Correctional Officer Blevins instructed Thomas not to bring more than one inch of paperwork to the law library in the future. Id. ¶ 46. When Thomas attempted to explain that the paperwork pertained to false information in his prison file,

Blevins responded that she "knew exactly what it was for" and that "it did not matter." Id. On

June 27, 2023, Thomas was scheduled for a two-hour time slot in the law library. Id. ¶ 44.

After he had been there for only 25 minutes, Blevins ended the appointment. Id. ¶ 45.

Similarly, on June 29, 2023, Blevins ended another two-hour appointment after Thomas had

only been in the law library for 16 minutes. Id. ¶ 48. Later that same day, when Thomas left

the dining hall with his meal tray, he heard Blevins tell K-9 Officer J. Adams "that's him,"

referring to Thomas. Id. ¶ 49.

Less than 24 hours later, on the morning of June 30, 2023, Thomas walked passed

Adams, and Adams "released the strap (leash) to the attack dog he controls and allowed the

dog to dart at Thomas in attack mode, coming within three (3) inches of Thomas' face and

left arm standing on its hind feet barking and snapping its teeth as it attempted to bite Thomas

in the face." Id. ¶ 50. Thomas alleges that the "targeted attack . . . invoked an overwhelming

fear" and that he was so startled that "he threw his hands in the air and leaned his body toward

the fence to avoid being bitten in the face." Id. ¶¶ 51–52.

Thomas subsequently submitted a written complaint against Adams (RNCC-23-INF-

01089). He alleges that Wagner altered the information contained in the complaint when

logging the complaint in VACORIS. Id. ¶ 53. In particular, Wagner indicated that Thomas

complained of the dog being within "63 inches" of his face and left arm, rather than "3 inches,"

and that VDOC policy prohibits K-9 officers from having their dogs within "15 feet" of

inmates, rather than "5 feet." Id. ¶ 54 (internal quotation marks omitted). After Thomas filed

another written complaint regarding the altered information and a VDOC administrator

instructed Assistant Warden Bateman to investigate the incident, Wagner generated a "new corrected receipt" for the written complaint against Adams. Id. ¶ 58.

On August 24, 2023, unknown correctional officers collectively referred to as John Doe #4 conducted a quarterly shakedown of Thomas's pod at River North. Id. ¶ 66. During the shakedown, a drug-detection dog was used to detect illegal substances. Id. ¶ 67. The dog's handler, John Doe #5, walked the dog past Thomas and through the cell that Thomas shared with another inmate, and the dog did not detect any contraband. Id. ¶ 68. Thomas alleges that the same procedure was followed for "all of the prisoners in the housing unit." Id.

Although the dog did not alert to the presence of contraband in Thomas's cell, Thomas and his cellmate were instructed to leave the pod for further screening, and the shakedown officers searched the cell. Id. ¶ 70. When Thomas returned to the cell, he discovered that his personal property had been "demolished" by the shakedown officers, while his cellmate's property was "barely touched." Id. ¶ 72. For instance, the officers tore apart Thomas's Gideon Bible and ripped the binding on two devotional books. Id. ¶ 73. Thomas alleges that all of his written complaint receipts, grievances, and affidavits related to this case were left "lying perfectly next to each other in a position as if they were read by the defendants, John Doe #4 and to give Thomas a warning" to "[s]top writing grievances." Id. ¶ 75.

Based on the foregoing allegations, Thomas asserts claims for denial of due process in violation of the Fourteenth Amendment (Claim 1) and for retaliation in violation of the First Amendment (Claim 2). In addition to monetary damages, Thomas seeks to have the allegedly false Security Information removed from VACORIS. He also seeks the restoration of all good-time credits lost as a result of being in the Step-Down Program at Red Onion. Id. at 28–29.

Thomas indicates that VDOC Director Dotson "is being sued in his professional and individual capacity because he . . . has the sole authority to enforce the injunctive relief sought in this action." Id. ¶ 78. All of the other defendants are sued in their individual capacities. Id. ¶¶ 79–91.

## II.    Standard of Review

The court is required to review a complaint in a civil action in which an inmate seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). The court must "dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements

liberally." <u>Id.</u> "But 'liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure.'" <u>Seabrook v. Driscoll</u>, 148 F.4th 264, 279 (4th Cir. 2025) (quoting <u>Bing v. Brivo Sys., LLC</u>, 959 F.3d 605, 618 (4th Cir. 2020)). A complaint filed without the assistance of counsel "still must contain enough facts to state a claim for relief that is plausible on its face." <u>Thomas v. Salvation Army S. Terr.</u>, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III.    Discussion

### A.    Screening of Claims under § 1915A

Thomas seeks relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Additionally, when defendants are sued in their individual or personal capacities, a plaintiff must show that each defendant, through the defendant's own individual actions, has violated the plaintiff's federal constitutional rights. <u>King v. Riley</u>, 76 F.4th 259, 269 (4th Cir. 2023); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 676.

### 1.    Due Process Claims Asserted in Claim 1

In Claim 1, Thomas asserts claims for denial of due process. The due process claims appear to be two-fold. He asserts a claim against multiple defendants for either entering allegedly false Security Information in VACORIS (John Doe #1) or failing to remove the

information (Bateman, Earhart, Wagner, Anderson, Paderick, and the unknown "higher-ups" referred to as John Doe #2). He also claims that he was placed in the Step-Down Program at Red Onion for an extended period without receiving due process and that he lost good-time credits as a result of his placement in the program. See Am. Compl. at 28 (seeking the restoration of "lost" good-time credits).

### a.    Security Information in VACORIS

Thomas's first claim is based on the Security Information contained in his VACORIS file. In his amended complaint, Thomas contends that the following information is false: ". . . Assaultive; Particularly Hideous Crime; Orange 2-3-4."[5] Am. Compl. ¶ 2. He asserts that he "has never assaulted nor been charged with assaulting any staff or inmate in prison" and that he "has never been charged with or committed a particularly hideous crime." Id. ¶ 2 n.2. Although he acknowledges being unaware of the "specific meaning" of "Orange 2-3-4," id. ¶ 61, he asserts that he "has never been or committed an Orange 2-3-4." Id. ¶ 2 n.2.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. More than 40 years ago, the United States Court of Appeals for the Fourth Circuit recognized that prisoners have "a limited right, grounded in the due process clause," to have prejudicial erroneous information expunged from their prison files. Paine v. Baker, 595 F.2d 197, 199 (4th Cir. 1979). The court held that "in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant

---

[5] Thomas does not dispute the veracity of the "escape risk" designation.

degree." Id. at 201. Importantly, the court emphasized that "it is not sufficient that the inmate disputes evaluations and opinions regarding him." Id. Likewise, "[i]t is not sufficient that the information is true but the inmate nonetheless deems it prejudicial." Id. Federal courts may not "oversee the discretionary decisions of prison administrators" or "second-guess their evaluations." Id.

Additionally, to obtain relief under § 1983 for a violation of the right to expungement recognized in Paine, "the inmate must allege that the prison officials have deprived him of this right." Id. at 202. "State prison authorities cannot be said to have denied an inmate's right to have erroneous information expunged from his file, unless they have been requested to do so and have refused." Id. at 202–03; see also McCrery v. Mark, 823 F. Supp. 288, 295 (E.D. Pa. 1993) ("The right to have false information eliminated from a prison file is deprived in a manner actionable under § 1983 when a defendant refuses under color of state law to remove or make right the erroneous information. Necessarily, a party cannot have refused to correct the inmate's files if he has not first been asked to do so.").

To the extent Thomas seeks to hold defendants liable under Paine v. Baker, he fails to state a claim upon which relief may be granted. Although he alleges that certain named defendants refused to remove the challenged Security Information after being asked to do so, he does not plausibly allege that any of the notations at issue constitute the type of false information that gives rise to a constitutional claim.

Turning first to the "assaultive" and "particularly hideous crime" comments, it is undisputed that Thomas has prior felony convictions in Virginia for malicious wounding and robbery, and court records available online indicate that Thomas was also convicted of armed

bank robbery and use or display of a firearm in committing a felony. The malicious wounding statute makes it a Class 3 felony to "maliciously . . . wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill." Va. Code Ann. § 18.2-51. "To be guilty under [this statute] a person must intend to permanently, not merely temporarily, harm another person." Johnson v. Commonwealth, 53 Va. App. 79, 101, 669 S.E.2d 368, 378 (Va. Ct. App. 2008); see also United States v. Rumley, 952 F.3d 538, 550 (4th Cir. 2020) (emphasizing that the Virginia statute not only "require[s] the causation of bodily injury, but it also requires that the person causing the injury have acted with the specific intent to cause severe and permanent injury—maiming, disfigurement, permanent disability, or death"). By definition, malicious wounding is an assaultive offense. See Carter v. Commonwealth, 269 Va. 44, 47, 606 S.E.2d 839, 841 (Va. 2005) (explaining that "a common law assault, whether a crime or tort, occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm or engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim) (emphasis in original). Thus, regardless of whether Thomas has ever physically assaulted a prison guard or another inmate, he does not plausibly allege that his criminal history is devoid of assaultive behavior, rendering false the notation in the Security Information.[6]

---

[6] Using or displaying a firearm during the commission of a felony could also be considered assaultive behavior. The statute under which Thomas was convicted makes it unlawful "for any person to use or attempt to use any pistol, shotgun, rifle, or other firearm or display such weapon in a threatening manner while committing or attempting to commit" a felony offense such as robbery or malicious wounding. Va. Code Ann. § 18.2-53.1. The Supreme Court of Virginia has recognized that the purpose of § 18.2-53.1 is to "prevent[] actual physical injury or death" and "discourage conduct that produces fear of physical harm." Holloman v. Commonwealth, 221 Va. 196, 198, 269 S.E.2d 356, 358 (Va. 1980).

Thomas's assertion that he has never committed a "particularly hideous" crime fares no better. While Thomas obviously disagrees with this assessment of his criminal conduct,[7] Paine makes clear that an inmate's disagreement with "evaluations and opinions regarding [the inmate]" do not give rise to an actionable constitutional claim. Paine, 595 F.2d at 201; see also Williams v. Bishop, No. 8:19-cv-01677, 2020 WL 4698064, at *10 (D. Md. Aug. 13, 2020) (concluding that the information challenged by an inmate, which was based on an official's opinion after reviewing intelligence information and the inmate's infraction history, fell "outside the purview of Paine"); Maldonado v. Karnes, No. 3:14-cv-01330, 2014 WL 5035470, at *3 (M.D. Pa. Oct. 8, 2014) (concluding that the plaintiff's assertion that he was "falsely described as being a problem prisoner" was insufficient to state an actionable claim under Paine); Sheindlin v. Brady, 597 F. Supp. 3d 607, 637 n.8 (S.D.N.Y. 2022) (noting that comments describing the plaintiff's conduct as "horrible," "deranged," and "the lowest of the low" constituted nonactionable expressions of opinion rather than assertions of fact).

This leaves the "Orange 2-3-4" notation in the Security Information, the particular meaning of which Thomas is admittedly unaware. See Am. Compl. ¶ 61 (asserting that the code "clearly has a specific meaning which will be revealed in the discovery phase of this case"). Thomas does not allege facts from which the court could reasonably infer that this notation is false or that it has been or will be relied on to a "constitutionally significant degree." Paine, 595 F.2d at 202. And his desire to conduct discovery to determine the meaning of the

---

[7] "The dictionary defines hideous as 'morally offensive,' 'shocking,' or 'horrible.'" Godfrey v. Ga., 446 U.S. 420, 442 (1980) (Burger, C. J., dissenting); see also Hideous, Merriam-Webster, https://www.merriam-webster.com/dictionary/hideous (last accessed Nov. 12, 2025) (defining "hideous" as "morally offensive" or "shocking" and listing as an example "a hideous crime").

notation "cannot save his conclusory and speculative allegations from dismissal." <u>Desper v. Clarke</u>, 1 F.4th 236, 249 (4th Cir. 2021) (internal quotation marks omitted). It is well settled that "the Federal Rules of Civil Procedure 'do not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678–79); <u>see also</u> <u>Webb v. Trader Joe's Co.</u>, 999 F.3d 1196, 1204 (9th Cir. 2021) (noting that courts do not "condone the use of discovery to engage in fishing expeditions" when a plaintiff's allegations are based on mere speculation) (internal quotation marks and brackets omitted).

For these reasons, the court concludes that the amended complaint fails to state a claim for relief under <u>Paine</u>.

### b.    Placement in the Step-Down Program

As part of the allegations in Claim 1, Thomas alleges that he was placed in the Step-Down Program without being afforded due process and that he experienced "a loss of non-retrievable good time and the same atypical and significantly harsh . . . conditions" described in <u>Thorpe v. Clarke</u>, 37 F.4th 926 (4th Cir. 2022), and <u>Smith v. Collins</u>, 964 F.3d 266 (4th Cir. 2020). Am. Compl. ¶ 10. He seeks the restoration of "lost" good-time credits, and he seeks to recover damages for each day that he spent in the Step-Down Program. <u>Id.</u> at 28–29.

<u>Thorpe</u> and <u>Smith</u> both involve claims for denial of procedural due process brought by inmates housed in long-term solitary confinement at Virginia supermax prisons. <u>Thorpe</u>, 37 F.4th at 930–31, 941–42; <u>Smith</u>, 964 F.3d at 268–29. To the extent the amended complaint can be construed as asserting a claim for denial of procedural due process associated with Thomas's long-term placement in the Step-Down program and the loss of good-time credits, he fails to state a claim against any of the defendants listed in the amended complaint.

14

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). Additionally, "[t]o establish personal liability under § 1983, [a] plaintiff must 'affirmatively show[] that the official charge acted personally in the deprivation of the plaintiff's rights.'" Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (second alteration in original) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" Id. (quoting Iqbal, 556 U.S. at 676). "Importantly, mere knowledge of such a deprivation does not suffice." Id.

Here, Thomas does not allege that any of the defendants were personally involved in confining him "without due process . . . . in the indefinitely long, highly restrictive, intensive IM Step-Down Program" at Red Onion for over four years. Am. Compl. ¶ 8. Nor does he allege that any of the defendants were personally involved in the alleged deprivation of good-time credits without due process. Consequently, he fails to state a claim against the defendants in their individual capacities.

Additionally, "a § 1983 action will not lie when a state prisoner challenges the fact or duration of his confinement, and seeks either immediate release from prison, or the shortening of his confinement." Wilkinson v. Dotson, 544 U.S. 74, 79 (2005) (internal quotation marks and citations omitted). "Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks the very duration of [a prisoner's] physical confinement, and thus lies at the core of habeas corpus." Id. (internal quotation marks and citations omitted). Consequently, to the extent Thomas seeks the

15

restoration of good-time credits under § 1983, such relief is "foreclosed" by existing precedent. Wolff v. McDonnell, 418 U.S. 539, 554 (1974) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973)); see also Rhodes v. Sterling, 475 F. Supp. 3d 470, 474 (D.S.C. 2020) ("Following Preiser and Wolff, a prisoner may not use section 1983 to seek restoration of good-time credits . . . .").

Finally, Thomas has no viable claim for damages against Dotson in his official capacity. Because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," it is "no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Although § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." Fauconier v. Clarke, 966 F.3d 265, 279–80 (4th Cir. 2020). Accordingly, any claim for damages against Dotson in his official capacity must be dismissed.

### 2.    Retaliation Claims in Claim 2

In Claim 2, Thomas asserts that Burcham, Wagner, Blevins, Adams, Adkins, John Doe #4 (the unknown shakedown officers) and John Doe #5 (the unknown handler of the drug-detection dog) retaliated against him for filing written complaints and grievances. Although retaliation is not specifically referenced in the Constitution, it "is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." ACLU, Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). In order to state to state a colorable First Amendment retaliation claim, a plaintiff must plausibly allege: (1) that he

engaged in activity protected by the First Amendment; (2) that the defendant took some action that would likely deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017).

It is well established that utilizing a prison's grievance process is "First Amendment protected activity" for purposes of the first element. See Gowen v. Winfield, 130 F.4th 162, 174 (4th Cir. 2025) (citing Martin, 858 F.3d at 250; Booker v. S.C. Dept. of Corr., 855 F.3d 533, 541 (4th Cir. 2017)). Thus, the court must determine whether Thomas has plausibly alleged that the named defendants took an adverse action against him that was causally connected to his protected activity. Id.

To satisfy the second element, "a plaintiff must show that a defendant's conduct resulted in more than a de minimis inconvenience to the exercise of the plaintiff's rights; rather it must chill the exercise of such rights such that it would deter 'a person of ordinary firmness' from exercise in the future." Williams v. Mitchell, 122 F.4th 85, 89 (4th Cir. 2024) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)). "This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship," Booker v. S.C. Dep't of Corr., 583 F. App'x 43, 44 (4th Cir. 2014), as well as "the nature of the retaliatory acts," Williams, 122 F.4th at 90 (internal quotation marks omitted). "While the defendant's conduct must chill the exercise of a constitutional right, the conduct need not constitute a constitutional violation in itself." Id.

The third element of a retaliation claim requires the plaintiff to show that "there was a causal relationship between his protected activity and the defendant's conduct." Id. at 89. To

17

satisfy this element, "a plaintiff must show 'at the very least that the defendant was aware of plaintiff's engaging in protected activity,' and 'some degree of temporal proximity." Id. (brackets omitted) (quoting Constantine, 411 F.3d 474, 501).

### a.     Burcham, Wagner, and Adkins

Thomas asserts claims of retaliation against Burcham, Wagner, and Adkins based on various actions taken in connection with his use of the grievance procedure available to inmates in the custody of the VDOC. The procedure is set forth in VDOC Operating Procedure (OP) 866.1, and it includes an informal complaint process, a regular grievance process, and a grievance appeal process.[8]

Thomas alleges that Burcham was responsible for generating a grievance receipt for his informal written complaint seeking expungement of the challenged Security Information (RNCC-23-INF-00654) and that Burcham included incorrect information on the receipt— namely, that the Security Information included the date of "11/03/2020" rather than "11/03/2010." He claims that Wagner subsequently convinced him to withdraw a written complaint regarding the typographical error made by Burcham (RNCC-23-INF-00859), informed him that he could not prove that the original version of RNCC-23-INF-00654 was missing when Thomas inquired about it, and then provided a copy of the grievance receipt prepared by Burcham when Thomas requested a copy of the original written complaint. Thomas also claims that Wagner entered incorrect information in VACORIS when logging the written complaint filed against K-9 Officer Adams (RNCC-23-INF-01089) and that

---

[8] OP 866.1 is available online at https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-866-1.pdf (last accessed Nov. 12, 2025). The court is "entitled to take judicial notice of it." Gordon v. Schilling, 937 F.3d 348, 353 n.6 (4th Cir. 2019).

Adkins included incorrect information in the grievance receipt generated for RNCC-23-INF-00859 (the written complaint that Wagner convinced him to withdraw).

While Thomas is plainly concerned by the errors he alleges these defendants made, he has not plausibly alleged that they had any adverse consequences in his case or that they otherwise would deter a person of ordinary firmness from exercising his First Amendment rights. Thomas's own exhibits indicate that neither the incorrect date listed in the grievance receipt for RNCC-23-INF-00654 nor the absence of the original written complaint prevented him from filing a regular grievance regarding the Security Information contained in his VACORIS file. See Compl. Ex. C, ECF No. 46-1 at 19–22. Thomas also acknowledges that Wagner generated a corrected receipt for RNCC-23-INF-01089 after he filed a written complaint regarding the errors contained in the original receipt. To the extent Thomas faults Wagner for convincing him to withdraw his written complaint regarding the date error contained in the grievance receipt generated by Burcham, he has not plausibly alleged that such action was sufficiently adverse to support a retaliation claim. As noted above, the date error on the receipt did not preclude Thomas from utilizing the grievance procedure to seek expungement of the challenged Security Information. And inmates are not without recourse if they elect to withdraw a timely written complaint or regular grievance. The grievance procedure set forth in OP 866.1 specifically allows inmates one opportunity to resubmit a withdrawn complaint or grievance within the applicable time period. See VDOC 866.1 §§ II(B)(6) & III(G)(2); see also Compl. Ex. C, ECF No. 46-1 at 22.

In short, Thomas's allegations against Burcham, Wagner, and Adkins describe the type of "minor interference with an inmate's access to the administrative process that would not

19

deter an inmate of ordinary firmness from continuing to exercise his First Amendment right to file grievances and then to seek judicial remedies." Gonzalez v. Bendt, 971 F.3d 742, 747 (8th Cir. 2020) (concluding that an inmate failed to establish a claim of First Amendment retaliation based on the denial or delay in providing forms for the first step of a grievance process). Accordingly, the retaliation claims against these three defendants must be dismissed.

### b.    Blevins

For similar reasons, the court concludes that the amended complaint fails to state a plausible claim of retaliation against Blevins. Thomas alleges that Blevins ended his law library appointments early on two occasions, advised him not to bring more than one inch of paperwork to the law library, and identified him to defendant Adams when he passed Blevins and Adams leaving the dining hall. These allegations do not describe the type of conduct that would deter an individual of ordinary firmness from exercising his First Amendment rights. See, e.g., Meeks v. Schofield, 625 F. App'x 697, 702 (6th Cir. 2015) (affirming the district court's decision that searches of an inmate's workstation and the denial of access to the library on one occasion "were de minimis conduct that did not constitute adverse action"); Ford v. Northam, No. 7:22-cv-00122, 2023 WL 2767780, at *15 (W.D. Va. Mar. 31, 2023), aff'd, No. 23-6410, 2023 WL 6057493 (4th Cir. Sept. 18, 2023) (concluding that "being called to the law library on three occasions and then being sent back and not being permitted to research [did] not rise to the level of an adverse action sufficient to support a retaliation claim"); Garner v. Moore, No. 2:13-cv-00383, 2014 WL 4082510, at *3 (S.D. Tex. Aug. 19, 2014) (holding that the actions complained of, including verbal reprimands and the temporary suspension of library privileges, were so de minimis that they would not deter an ordinary person from

further exercising his rights). Therefore, the retaliation claim against Blevins must be dismissed.

### c.    John Doe #5

The retaliation claim against John Doe #5 (the unknown handler of the drug-detection dog) is also subject to dismissal. Thomas alleges that this defendant walked his dog passed him and his cellmate and through their shared cell on August 24, 2023, and that "all of the prisoners in the housing unit" were subjected to the same procedure. Am. Compl. ¶ 68. Thomas further alleges that he and his cell partner had to undergo further screening, including a urine analysis and a body scan in a machine similar to those used at airports, even though the dog did not alert to the presence of illegal substances or contraband on their person or in their cell.

These allegations do not plausibly suggest that John Doe #5 took any action against Thomas that was causally related to his protected activity. Thomas acknowledges that all of the inmates in his housing unit, including his cellmate, were subjected to drug-detection procedures, and Thomas does not allege that John Doe #5 was even "aware of [him] engaging in protected activity." Constantine, 411 F.3d at 501. Consequently, the retaliation claim against John Doe #5 must be dismissed.

### d.    Adams and John Doe #4

On the other hand, the court concludes that Thomas has alleged sufficient facts to proceed on his claims of retaliation against Adams and John Doe #4 (the unknown shakedown officers). Thomas alleges that Adams, a K-9 officer, "sick[ed]" his "attack dog" on him and allowed the dog to come within three inches of biting his face, and that the incident occurred less than 24 hours after Thomas left the library with his grievance paperwork and was pointed

out to Adams by defendant Blevins. Although the dog did not actually bite Thomas, courts have recognized that "threats of physical harm" constitute the type of adverse action that would deter a person of ordinary firmness from exercising his First Amendment rights. MacIntosh v. Clous, 69 F.4th 309, 316 (6th Cir. 2023) (collecting cases); see also Watison v. Carter, 668 F.3d 1108, 1116 (9th Cir. 2012) (concluding that an officer's alleged threat to hit an inmate constituted an adverse action for purposes of a First Amendment retaliation claim). While Adams may be able to show at summary judgment that he was unaware of Thomas's protected activity, the amended complaint, when liberally construed, suggests otherwise. Accordingly, the claim against Adams survives initial review and will be allowed to proceed.

The court reaches the same decision with respect to the claim against the unknown shakedown officers collectively referred to as John Doe #4. Thomas alleges that the officers destroyed his Bible and other religious texts during the course of searching his cell on August 24, 2023, while barely touching his cellmate's property, and that the officers intentionally left his "written complaint receipts, grievances, and affidavits related to this case lying perfectly next to each in a position as if they were read by [the shakedown officers] and to give Thomas a warning"—namely, that he "[s]top writing grievances." Am. Compl. ¶ 75. As another district court recently observed, "cell searches can amount to adverse actions that would deter a person of ordinary firmness [from engaging in protected activity], particularly when combined with destruction of property." Glaze v. Morgan, No. 2:22-cv-02845, 2025 WL 2701324, at *6 (S.D. Ohio Sept. 23, 2025) (internal quotation marks and alteration omitted). At this stage of the proceedings, the allegations that the shakedown officers destroyed Thomas's religious

books during the course of a cell search in which they also discovered and reviewed his grievance paperwork are sufficient to state a First Amendment claim of retaliation.

## B.    Other Pending Motions

On August 28, 2025, Thomas filed a motion seeking preliminary injunctive relief under Paine v. Baker. See ECF No. 54 at 1 (requesting "immediate intervention by way of a Court Order demanding the [VDOC] place a notation, regarding the disputed information, in Plaintiff's VACORIS file"). Because Thomas has not plausibly alleged that his VACORIS file contains the type of false information that gives rise to a federal constitutional claim or made a clear showing that irreparable harm is likely in the absence of preliminary injunctive relief, the motion will be denied. See Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); id. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.").

Additionally, Thomas's motion for sanctions, including the entry of default judgment, ECF No. 34, will be denied. Having reviewed the record, the court finds no basis for the imposition of sanctions based on the defendants' alleged failure to respond to discovery requests. Defense counsel was previously directed to advise the court whether counsel could identify any of the John Doe defendants based on the information provided by Thomas. ECF No. 19. Defense counsel filed a timely response to that order, ECF No. 24, and then moved for an extension of time to respond to Thomas's discovery requests, ECF No. 31. That motion

was based on the belief that many of Thomas's claims would be dismissed for failure to state a claim, and the court has since concluded that the amended complaint must be partially dismissed for that reason. Thus, there is no basis for the imposition of sanctions against the defendants or defense counsel.

## IV.    Conclusion

For the reasons stated, Thomas's motion for leave to file an amended complaint, ECF No. 46, is **GRANTED**; the defendants' motion to dismiss the original complaint, ECF No. 35, is **DENIED** as moot; and the amended complaint is **PARTIALLY DISMISSED** without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted. The case will proceed on the First Amendment claims of retaliation against J. Adams and the unknown shakedown officers collectively referred to as John Doe #4. Thomas's motion for preliminary injunctive relief, ECF No. 54, and his motion for sanctions, ECF No. 34, are **DENIED**. An appropriate order will be entered.

Entered: November 17, 2025

Michael F.
Urbanski
U.S. District Judge
2025.11.17
16:52:50 -05'00'

Michael F. Urbanski
Senior United States District Judge

24